UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

v.

DELOWAR HOSSAIN,

Defendant.

---------------------------------------------------------------

19-CR-606 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Defendant Delowar Hossain moves to compel notice and discovery of "all surreptitious government surveillance that caused his electronic and telephonic communications with others to be recorded, monitored, or otherwise surveilled, and that revealed information about his financial transactions, online activities, and personal contacts, domestic and overseas." (Def.'s Mot. to Compel at 1, ECF No. 44.) For the reasons set forth below, the Court denies Hossain's motion to compel certain disclosures and for an ex parte conference pursuant to CIPA section 2, and request for an expedited section 3500 disclosure schedule.

I. BACKGROUND

In this action, the government alleges that Delowar Hossain attempted to provide material support and resources for terrorism in violation of 18 U.S.C. § 2339(A), by attempting to travel overseas to join the Taliban, and attempting to make a contribution of funds, goods, and services to the Taliban in violation of 50 U.S.C. § 1705(a) and 31 C.F.R. §§ 595.201, 595.204, 595.205, and 594.310. (Superseding Indictment ¶ 1-2, ECF No. 55.) After determining that this case involves classified information, the government sought a protective order from this Court pursuant to section 4 of the Classified Information Procedures Act ("CIPA"). (Gov't Letter dated June 5, 2020, ECF No. 25.) On June 19, 2020, after considering the government's submission *in camera* and ex parte, the Court granted the protective order. (Order, ECF No. 26.)

Hossain subsequently filed a motion to compel, requesting that the government provide "any outstanding written or recorded communications attributable to Hossain in the government's attorneys' possession, custody, or control, or that the attorneys could know to exist through due diligence." (Def.'s Mot. to Compel at 1-2, ECF No. 44.) Hossain also contends that he has a "statutory and constitutional right to notice and discovery" of the classified surveillance techniques the government used to monitor his communications with others and urges the Court to compel the government to disclose

"all surreptitious electronic surveillance it conducted of Hossain's third-party communications." (Def.'s Mot. to Compel at 2-3, ECF No. 44.) He seeks to identify all types of surveillance investigators used to develop evidence in this case in order to "examine . . . whether any of the government's evidence is derived from unlawful surveillance." (*Id.* at 16.) In the alternative, he requests the Court to hold an ex parte conference with the defense pursuant to CIPA section 2 to allow the defense to argue for reconsideration of the Court's June 19 protective order. (*Id.* at 3-4.) The government, in turn, contends that it has no duty to disclose the information Hossain seeks. *See* Gov't's Mem. in Opp'n, ECF No. 45.

## II.  DISCUSSION

### A.  Legal Standard

The government has a robust and well-established duty to disclose certain types of information to criminal defendants. Under *Brady v. Maryland* and its progeny, the government has a duty to disclose favorable evidence where "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985); *see Strickler v. Greene,* 527 U.S. 263, 281-82 (1999) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State . . . and prejudice must have ensued."). The government's duty under *Brady* "covers not only exculpatory material, but also information that could be used to impeach a key government witness." *United States v. Coppa,* 267 F.3d 132, 135 (2d Cir. 2001) (citing *Giglio v. United States,* 405 U.S. 150, 154 (1972)).

The government's duty to disclose information under Rule 16 of the Federal Rules of Criminal Procedure extends to a broader range of information than that required by *Brady.* For instance, under Rule 16, "[u]pon a defendant's request, the government must disclose to the defendant . . . any relevant written or recorded statement by the defendant" as long as "the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists." Fed. R. Crim. P. 16(a)(1)(B). Similarly, the government "must permit the defendant to inspect and to copy or photograph" documents or data, among other objects, "if the item is within the government's possession, custody, or control" and the document or data is 1) "material to preparing the defense," 2) "the government intends to use the item in its case-in-chief at trial," or 3) "the item is obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E).

However, CIPA, which was "designed to establish procedures to harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest," limits a defendant's entitlement to discovery under Rule 16 in cases involving classified information. *United States v. Mostafa*, 992 F. Supp. 2d 335, 337 (S.D.N.Y. 2014) (quoting *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996)). CIPA "presupposes a governmental privilege against disclosing classified information"—the "state-secrets privilege"—which authorizes the government to withhold classified information vital to national security unless "the evidence at issue is material to the defense." *United States v. Aref*, 533 F.3d 72, 78-79 (2d Cir. 2008) (emphasis omitted); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010). Under CIPA's procedures, "[t]he court . . . may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure" upon submission of a "written statement to be inspected by the court alone." 18 U.S.C. app. 3 § 4. CIPA therefore "clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause . . . includ[ing] . . . information vital to the national security." *Aref*, 533 F.3d at 78.

In determining whether the government's state-secrets privilege "must give way" to a defendant's right to prepare his defense in a CIPA case, courts in this district apply the standard first enumerated in *Roviaro v. United States*, 353 U.S. 53, 61 (1957). In *Roviaro*, the U.S. Supreme Court held that the government's right to withhold an informant's identity requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. The U.S. Court of Appeals for the Second Circuit has determined that in CIPA cases the district court should first determine whether the information at issue is discoverable, and if it is, the court should next determine whether "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged" and whether "the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Abu-Jihaad*, 630 F.3d at 141 (quoting *Aref*, 533 F.3d at 80). Finally, the court should determine "whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense." *Id.* (quoting *United States v. Stewart*, 590 F.3d 93, 131 (2d Cir. 2009)). "Only when information is relevant or helpful to the defense must the Court then take the third step of balancing the 'public interest in protecting the flow of information against the individual's right to prepare his defense.'" *Mostafa*, 992 F. Supp. 2d at 338 (quoting *Roviaro*, 353 U.S. at 62).

## B.  Request for Disclosure of CIPA-protected Information

First, the Court rejects Hossain's challenge to the Court's ex parte consideration of the government's CIPA section 4 application. (Def.'s Mot. to Compel at 3, ECF No. 44.) That contention is baseless. CIPA explicitly authorizes courts to allow the government to "delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure" upon submission of a "written statement to be inspected by the court alone." 18 U.S.C. app. 3 § 4. As the Second Circuit has noted, allowing "an adversary hearing with defense knowledge would defeat the very purpose" of CIPA. *Aref*, 630 F.3d at 81. As such, the Second Circuit has held that "[b]oth CIPA section 4 and Rule 16(d)(1) authorize *ex parte* submissions." *Id.*

The Court also rejects Hossain's challenge to the Court's June 19 protective order. (Def.'s Mot. to Compel at 3, ECF No. 44.) On June 19, 2020, after considering the government's submission *in camera*, the Court first determined that the information the government sought to protect was classified. (Order at 1, ECF No. 26.) The Court then applied the three-part *Roviaro* test to determine whether Hossain was nevertheless entitled to disclosure of this classified information to assist him in preparing his defense. As explained in the Order, the Court found that 1) disclosure of the classified information described in the government's submission could reasonably be expected to cause serious damage to the national security, that 2) the head of the department which has control of the classified information described in the government's submission, after actual personal consideration, had lodged the state secrets privilege with respect to that classified information, and 3) that the classified information described in the government's submission was not discoverable under either *Brady* and its progeny or Rule 16, nor helpful to the defense under *United States v. Aref.* (Order at 1-2, ECF No. 26.) The information described in the government's submission is therefore not discoverable in this case, and the Court denies Hossain's motion to compel as to the information covered by the Court's June 19 protective order. To the extent that, as Hossain alleges in his reply submission, the government has not produced any discoverable information pursuant to Rule 16(a)(1)(B)(i) that remains *outside* the scope of the Court's June 19 protective order, the Court directs the government to do so. *See* Def.'s Reply at 2, ECF No. 53.

The Court further rejects Hossain's request for an ex parte hearing under CIPA section 2. Courts in this district regularly employ ex parte conferences in the CIPA context to offer defendants an opportunity to "apprise [the Court], ex parte, of their theory of the case." *See United States v. Chi Ping Ho*, No. 17-CR-779, 2018 WL 6082514, at *3 (S.D.N.Y. Nov. 21, 2018) (citation omitted). However, Hossain was aware that the government had moved for a protective order under CIPA and failed to raise a contemporaneous challenge to that motion. *See* Gov't's Letter dated June 5, 2020, ECF

No. 25. The Court therefore declines to re-review its June 19 protective order. *See United States v. Thomas*, 201 F. Supp. 3d 643, 648 (E.D. Pa. 2016).

### C.  Request for Disclosure of Surveillance Techniques Employed in this Action

Hossain also argues more broadly that he is entitled to disclosure of each type of surveillance technique the government used to monitor his third-party communications. (Def.'s Mot. to Compel at 1, ECF No. 44.) As other courts to consider similar motions have concluded, there is no support for Hossain's contention that he holds a "broad right to notice of, and information about, each surveillance technique used by the Government." *United States v. Mohammad*, 339 F. Supp. 3d 724, 754 (N.D. Ohio 2018) (denying defendants' motion for notice of each surveillance technique used by the government against them); *see also, e.g., Thomas*, 201 F. Supp. 3d at 646-47 (citing cases denying motions to compel). The Court thus rejects Hossain's contention that he holds an unqualified right to disclosure of all government surveillance techniques used to investigate him.

Hossain also fails to show that the government is required to produce information concerning its surveillance techniques under either *Brady* and its progeny or under the Federal Rules of Criminal Procedure. Although the government must provide information related to surveillance techniques if that information is material and exculpatory under *Brady*, the government has consistently represented that it is in compliance with its *Brady* obligations in this case. (Gov't's Mem. in Opp'n at 1, 14, ECF No. 45.) The government's affirmative representation that "it is aware of its obligations under *Brady* and its progeny and will provide such information to the defense as soon as it learns of its existence" is generally "sufficient to satisfy the [g]overnment's *Brady* obligations." *United States v. Morales*, 280 F. Supp. 2d 262, 275 (S.D.N.Y. 2003). The Court therefore declines to require disclosure of all surveillance techniques used against Hossain in this case on *Brady* grounds. *See United States v. Wedd*, No. 15-CR-616, 2016 WL 1055737, at *5 (S.D.N.Y. Mar. 10, 2016) (denying defendant's request for disclosure of *Brady* materials where the court found "no basis to believe that the Government has failed to meet its *Brady* obligations or will not continue to meet them").

The Court also disagrees with Hossain's one-sentence contention that "Federal Rules of Criminal Procedure 12(b)(3)(C), 16(a)(1)(B)(i), and 16(a)(1)(E)(i) also support [his] request for notice and discovery." (Def.'s Mot. at 19, ECF No. 44.) Rule 12(b)(3)(C) merely requires motions for suppression of evidence to be made before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). Rule 16(a)(1)(B)(i), in turn, requires the government to disclose "any relevant written or recorded statement by the defendant" under certain circumstances. Fed. R. Crim. P. 16(a)(1)(B)(i). This language is limited to

the statements themselves and does not support a request for broad disclosure of surveillance techniques used by the government.

Under Rule 16(a)(1)(E), "the [g]overnment generally must provide an item to the defendant 'if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.'" *United States v. Weigand*, No. 20-CR-188, 2020 WL 5105481, at *11 (S.D.N.Y. Aug. 31, 2020). Regardless of whether a list of surveillance techniques counts as an "item" for purposes of Rule 16(a)(1)(E), Hossain has failed to show that a list of surveillance techniques meets any of these requirements. A list of surveillance techniques used by the government is not something that was "obtained from" or "belongs to" Hossain within the meaning of Rule 16(a)(1)(E)(iii). And the government states that "[n]one of the evidence on which [it] intends to rely . . . is derived from any classified source." (Gov't's Mem. in Opp'n at 14, ECF No. 45.) The government therefore does not intend to use evidence gained from classified surveillance techniques in its case-in-chief at trial, as specified by Rule 16(a)(1)(E)(ii).

Nor has Hossain shown that a list of surveillance techniques is "material to preparing the defense" within the meaning of Rule 16(a)(1)(E)(i). Evidence is material for purposes of Rule 16(a)(1)(E)(i) where it "could be used to counter the government's case or to bolster a defense . . . or enable the defendant significantly to alter the quantum of proof in his favor." *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013) (internal quotations and citations omitted). However, "[t]he defendant must make a prima facie showing of materiality and must offer more than the conclusory allegation that the requested evidence is material." *Weigand*, 2020 WL 5105481, at *11 (quoting *Urena*, 989 F. Supp. 2d at 261). Having failed to offer any explanation of how Rule 16(a)(1)(E)(i) supports his right to broad discovery of the surveillance techniques used by the government beyond his one-sentence assertion that it does, Hossain has failed to make a prima facie showing that evidence of every surveillance technique used against him is material and discoverable under Rule 16(a)(1)(E)(i).

However, Hossain correctly notes that the government is required to disclose the surveillance techniques used to investigate a defendant under certain circumstances. For instance, if the government obtains information obtained or derived from a FISA order, it must provide notice to the "aggrieved person" when it intends to use that information in a "trial, hearing, or other proceeding in or before any court." 50 U.S.C. § 1806(c). But in this case, the government has repeatedly affirmed that "no FISA-obtained or FISA-derived information will be used against the defendant at trial or any other hearing in the case." (Gov.'s Mem. in Opp'n at 19, ECF No. 45.) Thus, the FISA provisions requiring notice are not at issue here.

The government must also provide information related to unlawfully obtained evidence under 18 U.S.C. § 3504. 18 U.S.C. § 3504 provides that a defendant is entitled to challenge a source of evidence as "inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act." 18 U.S.C. § 3504. In this case, as noted above, the government avers that "[n]one of the evidence on which the Government intends to rely . . . is derived from any classified source." (Gov't's Mem. in Opp'n at 14, ECF No. 45.) The "bulk" of the evidence it intends to introduce at trial concerns the defendant's in-person conversations with government informants. (*Id.* at 19.) Hossain does not contend that this evidence was unlawfully obtained. Should the government seek to introduce other evidence against Hossain that Hossain believes was unlawfully obtained, Hossain may contest the admissibility of such evidence at the time the government seeks to introduce it. *See Thomas*, 201 F. Supp. 3d at 648 (finding the defendant's speculation that she "could have been subject to illegal surveillance without directly accusing the Government of having done so" was "insufficient to trigger the Government's response requirement" under 18 U.S.C. § 3504); *see also United States v. Saipov*, 2019 WL 5558214, at *5 (S.D.N.Y. Oct. 29, 2019) (denying defendant's motion to compel where the court found the government had established that "none of the evidence it intends to introduce . . . was derived from the surveillance at issue").

## D.   Request for Expedited 3500 Disclosure Schedule

Finally, Hossain requests "an expedited 3500 disclosure schedule." (Def.'s Mot. to Compel at 2 n.1, ECF No. 44.) 18 U.S.C. § 3500, the Jencks Act, "permits disclosure of witness statements and reports in a criminal case." *United States v. Shyne*, 617 F.3d 103, 106 (2d Cir. 2010). After a witness for the government "has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Although courts "lack[] power to compel pretrial production of Jencks Act material," *Weigand*, 2020 WL 5105481, at *16; *United States v. Morgan*, 690 F. Supp. 2d 274, 285-86 (S.D.N.Y. 2010), the government "has an obligation to disclose Jencks Act material to defendants sufficiently early to permit them to adequately prepare a defense." *Weigand*, 2020 WL 5105481, at *16. The government has undertaken to complete its Jencks Act disclosures two weeks before the beginning of trial, Gov't's Mem. in Opp'n at 23, ECF No. 45, and the Court sees no reason to require production before that time.

### E.   The Government's Disclosure Failures

However, all is not as simple as it appears. Throughout this litigation the government has consistently represented that it "recognizes and is in compliance with its obligations under Rule 16 and *Brady* . . . and it will remain in compliance with those obligations throughout this prosecution." (Gov't's Mem. in Opp'n at 14, ECF No. 45.) Indeed, it has also notified the Court that it "[stood] ready to proceed to trial in this case." (Gov't's Letter dated Nov. 17, 2020 at 1, ECF No. 66.) Nonetheless, on November 10, the parties submitted a joint letter requesting an adjournment of at least 90 days of the previously established December 15 trial date in this action. (Def.'s Letter dated Nov. 10 at 1, ECF No. 62.) The asserted reason for the requested adjournment was that on November 5, the government had started producing "nearly 450 files of electronic discovery," the "bulk" of which had not been previously disclosed to the defense. (*Id.*)

One week later, the government wrote to the Court that "[i]n the course of preparing for trial, the government discovered that [its] representations" that it had "completed its production of Rule 16 discovery . . . were inaccurate." (Gov't's Letter dated Nov. 17, 2020 at 1, ECF No. 66.) Specifically, the government wrote that during the week of November 2 it realized that certain screenshots of messages between Hossain and the confidential sources ("CSes") had never been produced. (*Id.* at 1-2.) It promptly produced them and undertook to determine whether there were additional materials that should have been produced, including videos of the CSes' phones showing text messages between them and Hossain as well as surveillance and reports and other materials. (*Id.* at 2-3.) The government wrote that it "sincerely regrets its mistakes, and continues to be committed to taking all necessary steps to correct them." (*Id.* at 3.)

Although the Court has no reason whatsoever to conclude that the government purposefully failed to make these disclosures, the fact remains that it has not lived up to its repeated—perhaps reflexive—representations of compliance with all of its discovery obligations. In light of this failure, the Court sees fit to forcefully remind the government that its duty to do so is of paramount importance. As recently as last month, Congress underscored the importance of prosecutorial compliance with discovery obligations in enacting the Due Process Protections Act. *See* Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020). Congress was concerned about "inadequate safeguards in Federal law" to ensure prosecutorial compliance with disclosure obligations. *See, e.g.*, 166 CONG. REC. H4,582-83 (daily ed. Sept. 21, 2020) (statement of Rep. Jackson Lee). Indeed, it was so concerned that it chose to amend the Federal Rules of Criminal Procedure itself, a process usually initiated by the U.S. Supreme Court, not Congress. *See* 28 U.S.C. § 2072. The Act adds a new provision to Federal Rule of Criminal Procedure 5 and mandates that "[i]n all criminal proceedings . . . the judge shall issue an oral and written order to prosecution and

defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020).

In compliance with that statute and in order to make the government's disclosure obligations pellucid, those obligations are as follows:

> The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government . . . . This obligation applies regardless of whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.

> As part of these obligations, the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. Such information must be disclosed sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order.

> The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future. Additionally, if information is otherwise subject to disclosure, it must be disclosed regardless of whether the Government credits it . . . .

> If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:
> (1) specify the terms and conditions of such production;
> (2) grant a continuance;
> (3) impose evidentiary sanctions;
> (4) impose sanctions on any responsible lawyer for the Government;
> (5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or
> (6) enter any other order that is just under the circumstances.

*See, e.g.*, Rule 5(f) Order, United States v. Irizarry, No. 15-CR-329-JMF (S.D.N.Y. Oct. 29, 2020), ECF No. 43.

The Court issues this reminder to ensure that the government fully understands the importance of its obligations—especially considering a prosecutor's unique responsibility

to vindicate the principle of full and fair disclosure that remains "central to our criminal-justice system." *United States v. Nejad*, No. 18-CR-224, 2020 WL 5549931, at *1 (S.D.N.Y. Sept. 16, 2020).

Dated:  New York, New York
        November 23, 2020

SO ORDERED:

Sidney H. Stein, U.S.D.J.