**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

February 16, 2021

**VIA ECF**
Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: **United States v. Delowar Hossain**
**(S1) 19 Cr. 606 (SHS)**

Dear Judge Stein:

    We write to respectfully request an adjournment of the March 24, 2021 trial date in the above-captioned matter. In light of the continuing threat to public health and safety posed by COVID-19 and the onset of new variants of the virus, the interests of justice would not be served by conducting a jury trial in this matter next month. Moreover, the persistent threat of COVID-19 presents a host of Constitutional implications that threaten the fairness of the proceeding and weigh against forcing the matter to go forward on March 24, 2021.

    For the reasons contained herein, we ask the Court to adjourn trial to a date in the fall of 2021 when it is expected that the vaccine will be widely available to all persons and already administered to a vast majority of the public, and when masking and social distancing requirements are lifted, thereby eliminating many of the concerns raised herein.

    Mr. Hossain will waive his Constitutional Right to a Speedy Trial and consent to the exclusion of time under the Speedy Trial Act. Since he is released on bail and in compliance with all conditions of his release, there is no urgency to bringing this matter to trial.

I.     **Proceeding to Trial in March Creates an Unnecessary and Dangerous Risk to Personal and Public Health**

COVID-19 is a dangerous and deadly virus that is still spreading around the country, New York State and New York City. "At least 121 new coronavirus deaths and 6,538 new cases were reported in New York [State] on Feb. 15. Over the past week, there has been an average of 8,173 cases per day, a decrease of 30 percent from the average two weeks earlier."[1] In all of the counties comprising the Southern District of New York, based on cases per capita and test positivity, the risk of getting COVID-19 is considered either extremely high or very high.[2] January 2021 was the worst month for newly reported cases in New York City since the beginning of the pandemic.[3] On February 15 2021, in New York City, there were at least 71 new coronavirus deaths and 3,628 new cases.[4] "Many of the neighborhoods with the highest number of cases per capita were areas with the lowest median incomes and largest average household size. The biggest hot spots included communities in the South Bronx, north and southeast Queens, and much of Staten Island."[5]

Multiple variants of the coronavirus that causes COVID-19, first identified in the United Kingdom, South Africa and Brazil, have made it to our shores.[6] Dr. Rochelle Walensky, director of the CDC, predicts that the U.K. strain may be the "dominant strain" here by the end of March.[7] According to the CDC, these variants spread more easily and quickly.[8] Scientists are still researching whether these variants could cause more severe illness and whether the currently available vaccines will protect people against them.[9] Currently, in New York City, only about 55 coronavirus cases a day are sequenced and screened for the more contagious variants.[10]

---

[1] https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html?action=click&module=covid_tracking&pgtype=Interactive&region=TableRowLink.
[2] https://www.nytimes.com/interactive/2021/us/new-york-city-new-york-covid-cases.html.
[3] Id.
[4] https://www.nytimes.com/interactive/2020/nyregion/new-york-city-coronavirus-cases.html.
[5] Id.
[6] https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant-cases.html.
[7] https://www.cbsnews.com/news/rochelle-walensky-cdc-director-uk-strain-coronavirus-face-the-nation/.
[8] https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html.
[9] Id.
[10] https://www.nytimes.com/2021/02/03/nyregion/nyc-coronavirus-variant.html.

In light of these variants, experts warn against loosening restrictions despite a decline in COVID-19 infection and death rates and the administration of vaccines. Dr. Anthony Fauci warns that "emerging variants could pose a 'stumbling block' and Americans shouldn't become complacent."[11] Dr. Michael Osterholm, director of the University of Minnesota's Center for Infectious Disease Research and Policy, is warning about the possibility of another 'major surge' in COVID-19 cases, as new variants of the virus start to spread in the United States.[12] In a January 27, 2021 interview he opined, "You know, I worry the next six to 14 weeks could be the darkest weeks of the pandemic . . . We're down now to 150,000 cases a day, which seems down. . . . Remember when 70,000 or 32,000 cases a day seemed high? And if this variant takes off here in North America like it has throughout Europe, I think we could be seeing numbers much, much higher than we've had to date."[13] And on February 8, 2021 he claimed, "I tell you with certainty, mark my word, in a few weeks this is going to be a very different picture in the United States than it is right now."[14] He likened it to being on shore and not knowing "there is a category 5 hurricane, 450 miles south and it's heading directly to your beach." [15] And he added that it's not time for a victory lap, "Having 120,000 new cases a day surely would not seem like victory last July."[16]

The Southern District of New York ("SDNY") Court has not been spared from this dangerous and deadly virus. Notwithstanding the SDNY's valiant efforts to protect employees and the public, COVID-19 has infected personnel working in the courthouse at 500 Pearl Street. On January 5, 2021, Chief Judge Colleen McMahon issued a First Amended Standing Order effective January 19, 2021 adjourning all jury trials scheduled for the period of January 19, 2021 and ending February 12, 2021. And despite the technical lifting of the Standing Order, there is no guarantee that the risks associated with the pandemic that compelled the adjournment of all

---

[11] https://www.axios.com/fauci-covid-pandemic-biden-teachers-vaccines-db027a7c-60af-4bff-bb96-7e22e73e219f.html.
[12] https://kstp.com/coronavirus/u-of-m-infectious-disease-expert-warns-lawmakers-of-another-possible-major-surge-in-covid-19-cases-new-variant-doctor-michael-osterholm/6000544/.
[13] https://www.huffpost.com/entry/michael-osterholm-warning-coronavirus-pandemic_n_60112bc5c5b6b8719d888159.
[14] https://www.radio.com/wccoradio/news/local/osterholm-says-its-too-early-for-covid-19-victory.
[15] Id.
[16] Id.

jury trials has actually abated. In recognition of the persistent threat posed by COVID-19, on February 8, 2021, Chief Judge Colleen McMahon issued M10-468, Amended Standing Order, that supersedes and replaces the Standing Order on Restrictions to Entry to Courthouses that was entered January 29, 2021. See Exhibit A, Amended Standing Order. The February 8, 2021 Order imposes more rigid and stringent rules of entry "in the interest of public health and safety." Id. The categories of persons prohibited from entering the courthouse have increased significantly. The Order also orders compliance with new, more restrictive rules concerning face coverings, social distancing and instructional signage.

Additionally, on February 11, 2021, District Executive Edward Friedland issued a Memorandum with the subject line, "Mask Protocol," to all SDNY judges and all SDNY employees. See Exhibit B, Friedland Memorandum. The Memorandum begins, "The discovery of highly transmissible coronavirus variants in the United States has public health experts urging all Americans to upgrade simple cloth masks." Id. The new mask protocols outlined in the Memorandum are the result of consultation with an epidemiologist guiding the Court to provide "much-needed" extra protection.

Chief Judge McMahon's Amended Order and District Executive Friedland's Memorandum are implicit acknowledgments of the continuing dangers associated with COVID-19 and its emerging variants and make abundantly clear that COVID-19 and its variants still present significant risks to the health and safety of all those who enter the courthouse.

The CDC continues to warn that "the more closely you interact with others and the longer that interaction, the higher the risk of COVID-19 spread." [17] A trial is all about interaction, at every step of the process. Despite protocols designed to limit the spread of the virus in the courtroom, it is simply not safe to enclose what will likely be more than 30 people (including the jury, counsel, staff for both parties, court personnel and spectators) in one room for eight hours a day. In addition, all counsel will be forced to meet in closed spaces with each other, witnesses, and support staff on a daily basis for hours after the court day ends. And then, after all of that, we must go home to friends and family, some of whom are at a higher risk of death or serious illness from COVID-19.

---

[17] https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/going-out.html

In light of the continuing spread of the coronavirus and the proliferation of more contagious variants, which are predicted to become the dominant strains just as this trial is scheduled to commence, it is simply not safe and not in the interests of public health to begin trial until the vast majority of the population in New York is vaccinated. Nationwide, it is predicted that "[i]f the country maintains its current pace of administering first doses, about half of the total population would be at least partially vaccinated around late June, and nearly all around mid-November, assuming supply pledges are met and vaccines are eventually available to children."[18] In New York State, the Federal Government has only provided around 300,000 vaccines per week for over seven million people who are eligible.[19] As of February 16, 2021, only 4.2% of the population in the state have received two shots of the vaccine and only 12% of the population have received one shot.[20] According to the New York City Department of Health, "Phased distribution will take time, with vaccines not expected to be widely available to all New Yorkers until mid-2021."[21]

## II.     Proceeding to Trial Threatens Mr. Hossain's Constitutional Rights.

Proceeding to trial in March raises a host of constitutional concerns that threaten the fairness of the proceeding. The constitutional rights at issue here include, but are not limited to, Mr. Hossain's right to the effective assistance of counsel, his right to a jury impaneled from a fair cross-section of the community, and his right to an impartial and competent jury that will not resent Mr. Hossain for seeking a trial during a pandemic and feel pressured by the fear of contagion.

---

[18] https://www.nytimes.com/interactive/2020/us/covid-19-vaccine-doses.html.
[19] https://covid19vaccine.health.ny.gov/.
[20]  https://www.nytimes.com/interactive/2020/us/covid-19-vaccine-doses.html.
[21] https://www1.nyc.gov/site/doh/covid/covid-19-vaccine-eligibility.page#:~:text=The%20COVID%2D19%20vaccine,until%20mid%2D2021.

### A. Mr. Hossain's Right to the Effective Assistance of Counsel.

Defendants enjoy a right to the assistance of counsel at all critical stages of a criminal proceeding.[22] Both the trial itself and the post-indictment period before trial constitute critical stages.[23] When defendants suffer the impairment of counsel by a state-created barrier, they need not show that the inadequate performance affected the outcome—they need only show that such barriers affected counsel's performance.[24] The extreme limitations on counsel required by the February 8, 2021 Amended Order and other protocols would diminish Mr. Hossain's right to counsel through state interference that threatens the constructive denial of counsel altogether.

First, face covering and social distancing rules as announced in Chief Judge McMahon's Amended Order and Mr. Friedland's Memorandum severely limit counsel's ability to communicate with the Mr. Hossain, co-counsel, opposing counsel, witnesses, investigators, and paralegals during the trial. Most critically, the rules impede Mr. Hossain's unqualified right to consult with counsel throughout the trial.[25] "[T]he role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance."[26] The current rules, though necessary to protect health and safety, will prevent Mr. Hossain from freely and effectively communicating with his attorneys in real time at counsel table. The efficacy of attorney-client and co-counsel consultation during a trial through the use of unaccustomed telephones while sitting six feet apart cannot compare to regular, side-by-side consultation. Counsel will not be able to quickly show Mr. Hossain paper exhibits safely or share a laptop to look at electronic exhibits together. Realistically, counsel and Mr. Hossain will be forced to choose between their own individual safety and their ability to meaningfully communicate with one another. And as counsel and Mr. Hossain inevitably violate the SDNY's

---

[22] See Montejo v. Louisiana, 556 U.S. 778, 786 (2009).
[23] See Kirby v. Illinois, 406 U.S. 682, 688 (1972) ("[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him.").
[24] See Smith v. Robbins, 528 U.S. 259, 287 (2000) ("[V]arious kinds of state interference with counsel's assistance' can warrant a presumption of prejudice.") (internal quotations omitted); Perry v. Leeke, 488 U.S. 272 (1989) (recognizing that while most claims of ineffectiveness require a showing of prejudice, "direct governmental interference with the right to counsel is a different matter").
[25] See Geders v. United States, 425 U.S. 80, 88 (1976).
[26] Id.

strict social distancing requirements, they will inevitably cause discomfort to the jurors, provoking their disfavor.  It simply is not possible to effectively represent Mr. Hossain at trial and remain six feet away from him at all times.

      Second, in the retrofitted courtrooms designed to accommodate trials during the pandemic, jurors will be seated farther away from the witness and counsel table than they usually are, which makes it harder to observe individual jurors' reactions to evidence and their level of attention during the trial.  Jurors will also be masked throughout trial preventing counsel and Mr. Hossain from properly assessing their demeanor, reactions and facial expressions during voir dire, witness testimony, and opening and closing statements.  Witnesses will testify behind a plexiglass barrier and may opt to wear a mask or face shield.   Masks obscure faces and a witness's demeanor and ultimately undermine the jury's truth-seeking function.  Counsel and Mr. Hossain will also be required to wear a mask throughout the trial except when examining a witness or testifying, respectively.  Accordingly, unless he testifies, Mr. Hossain will be subject to the judgment of 12 people who have never seen his face.

      Third, given the rules of social distancing, there is a concern that the Court will limit sidebars during trial.  Because of the nature of the charges there can be no doubt that evidentiary issues will arise that will require sidebar discussion.  Counsel will be forced to choose between waiving objections or requiring the entire proceeding to pause while counsel and the Court go to a separate room for a sidebar (if the Court even permits this), with the knowledge that every minute of the trial creates health risks to all participants.

### B. Mr. Hossain's Right To A Jury Selected From A Fair Cross Section Of The Community.

      Summoning jurors during the COVID-19 pandemic will make it impossible to select an impartial jury next month from a fair cross section of residents in the SDNY.  The Sixth Amendment guarantees a defendant's right to "an impartial jury drawn from a fair cross section of the community."[27]  To satisfy the Sixth Amendment, venires or pools from which jurors are drawn must not systematically exclude distinctive groups and thereby fail to reasonably represent the community.  Because of the COVID-19 pandemic, the SDNY has instituted safety protocols and screening measures designed to exclude those in the community whose lives have been

---

[27] Berghuis v. Smith, 559 U.S 314, 314 (2010) (citing Taylor v. Louisiana, 419 U.S. 522 (1975)).

7

severely impacted by COVID-19, whether for health, family, or economic reasons.  While entirely appropriate as safety and humanitarian measures, those protocols would exclude groups of people disproportionately impacted by COVID-19, including the elderly, women, racial and ethnic minorities, and the working poor.

Specifically, the SDNY jury plan contemplates that "[p]rospective jurors will receive a Supplemental Screening Questionnaire providing an opportunity to request, in advance, deferral of their service for legitimate pandemic-related reasons."  See Exhibit C, Supplemental Juror Questionnaire, ("COVID-19 Questionnaire").  The COVID-19 questionnaire indicates that "[d]ue to COVID-19, we are performing juror screening by phone the week prior to the jury return date printed on the enclosed summons. This phone screening permits the court to assess and grant or deny juror adjournment requests remotely, without prospective jurors traveling to the courthouse."

Further, the questionnaire instructs potential jurors "IF YOU ANSWERED YES TO QUESTIONS 1 THORUGH 7 on this questionnaire, or if you wish to be excused from jury service or have your jury service postponed (questions 8 and 9), please call Jury Administration . . . the week prior to your report date to participate in a phone screening."  Question 7 is a broadly worded question which asks, "Is there any reason related to COVID-19 that you feel would preclude you from serving on a jury?"  Question 8 suggests possible postponements if a potential juror is a "healthcare worker directly involved with the treatment of COVID-19 disease" or the juror works "in another field that puts me in direct contact with people who have been diagnosed with COVID-19."  Question 9 alters the category of traditionally excused jurors to those caring for children under 12 who are "not employed outside" of their home.  Compare Question 9 with Jury Plan, Art. VI (2) (Persons having legal custody and active daily care of a child or children under the age of 12 years; or who are essential to the daily care of aged or infirm persons.).  Question 9 also permits the deferral of service for all individuals over the age of 70, which would entirely exclude elderly people from the venire.

It is well documented that Blacks and Latinos are at increased risk of getting sick and dying from COVID-19.[28]  According to the CDC, among the factors contributing to this

---

[28] See Center for Disease Control and Prevention, Health Equity Considerations and Racial and Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited Feb. 15, 2021).

increased risk are institutional discrimination, healthcare access, occupation, educational, income, and wealth gaps, and housing disparities. With respect to occupation, the CDC notes, "people from some racial and ethnic minority groups are disproportionately represented in essential work settings such as healthcare facilities, farms, factories, grocery stores, and public transportation."[29] As a result, systematically excusing healthcare workers clearly impacts a protected group or groups and creates an underrepresentation of those groups in the pool of prospective jurors. Furthermore, responsibility for childcare and the care of the aged or infirm falls in large measure to women and minorities, and their exclusion from jury service deprives Mr. Hossain of his Sixth Amendment right to a jury selected from a fair cross section of the community.

In short, a large number of elderly people, women, low income persons, and people of color will be systematically excused from the venire before they ever reach the courthouse. Again, this is appropriate for health and humanitarian reasons. But it means that the venire will be skewed in such a way that a fair cross-section of the SDNY cannot be achieved based on race, gender, age, and economic status.

Finally, even if every cognizable group in the SDNY had the same probability of jury selection, COVID-19 notwithstanding, it would still violate the Sixth Amendment and the Jury Selection Act to convene a jury on March 24, 2021. If we can predict nothing else about jury selection in a pandemic, one thing is almost certain: the response rate will be abnormally low. Because an adequate sample size is essential to random selection, this fact alone will destroy the random nature of the selection process. Further, it will significantly increase the likelihood that the responding population underrepresents some group, which necessarily increases the likelihood of a homogenous or statistically outlying jury. This is not a fair cross-section.

---

[29] Id.

### C. Mr. Hossain's Right To An Impartial and Competent Jury.

Trial during a deadly pandemic also compromises Mr. Hossain's rights to trial by an impartial jury and to be free of coercive verdicts. "Due process implies a tribunal both impartial and mentally competent to afford a hearing."[30] A trial, commenced on March 24, 2021, alleging a crime of terrorism cannot be accomplished consistently with these principles. Even in a far less controversial case, it would be hard for jurors to devote their full attention to the testimony and evidence while they worry about their safety and that of loved ones. Nor can they be expected to remain neutral in these circumstances, free of any resentment toward Mr. Hossain. The likelihood that a jury will blame Mr. Hossain for requiring them to sit in a trial that risks their health is hardly remote.[31] It creates "a real risk that jurors will resent being asked to serve on a jury during a global pandemic."[32]

The charges in this case heighten these risks immeasurably. Even in ordinary times, many jurors are unwilling to serve on a jury in a case involving a charge of terrorism or are unable to fairly evaluate the evidence in such a trial. Counsel and the Court will be restricted in their ability to identify these jurors. All venire members will have to be masked during the jury selection process, making it impossible for counsel or the Court to read facial expressions or reactions to questions, and greatly diminishing counsel's ability to effectively make peremptory challenges or challenges for cause. Private discussions with venire members who have confidential concerns—ordinarily a mainstay of jury selection in this district—either will not be possible because of social distancing requirements, or will require the Court, counsel, the defendant, the court reporter, and a venire member to move to a separate courtroom.

Finally, when the jury retires for deliberations they will likely return a quick verdict to terminate the proceedings. Other than avoiding service through *voir dire* or non-compliance with a summons, which should both be expected as jurors seek to avoid potentially deadly

---

[30] Jordan v. Massachusetts, 225 U.S. 167, 172 (1912).
[31] Of course, the public health risk is not limited to even those willing attendees in the courthouse. As public health officials and experts have explained repeatedly, the dynamic of community spread means that anyone with whom jurors, witnesses, lawyers, court personnel and staff means that anyone with whom the persons come in contact with are at risk, as are those with whom they come in contact ad infinitum.
[32] Josh Dubin, Covid-19's Next Victim? The Rights of the Accused, The Champion, Vol. XLIV No. 4, (May 2020), https://www.nacdl.org/Article/May2020-COVID19sNextVictimTheRightsoftheAccused

exposure to the virus, the speed of the verdict will be the one way that jurors can control the duration of their viral exposure. In deciding whether a verdict is coerced, "the real question is whether the jury was required to deliberate an unreasonable length of time or for unreasonable intervals or was threatened with the prospect of such unreasonably lengthy deliberations."[33] In the midst of a pandemic, nearly any amount of time is "an unreasonable length of time."

### III. Conclusion

For the reasons stated herein, on behalf of Mr. Hossain, we respectfully request that the trial in this matter be adjourned.

Respectfully submitted,

/s/ Amy Gallicchio
Amy Gallicchio
Andrew Dalack
Assistant Federal Defenders
Office: (212) 417-8728
Mobile: (917) 612-3274

cc: AUSA David W. Denton, Jr.
AUSA Jessica K. Fender

---

[33] United States v. Kimmel, 777 F.2d 290, 295 n.5 (5th Cir. 1985).