UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DELOWAR HOSSAIN,

Defendant.

19-CR-606 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

In this action, the government alleges that defendant Delowar Hossain attempted to provide material support or resources for terrorism and attempted to make a contribution of funds, goods, and services to the Taliban in violation of 18 U.S.C. § 2339(A), 50 U.S.C. § 1705(a), and 31 C.F.R. §§ 594.201, 594.204, 594.205, and 594.310. (Superseding Indictment ¶¶ 1-2, ECF No. 55.) After determining that this action involved classified information, the government sought a protective order from this Court pursuant to section 4 of the Classified Information Procedures Act ("CIPA"). (Letter from the Gov't dated June 5, 2020, ECF No. 25.) CIPA section 4 permits the Court to "authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure" upon submission of a "written statement to be inspected by the court alone." 18 U.S.C. app. 3 § 4. On June 19, 2020, after considering the government's submission *in camera* and ex parte, the Court granted a protective order. (Order, ECF No. 26.)

In February 2021, the government sought additional protective measures for the classified information involved in this case pursuant to a different provision of CIPA—CIPA section 6. (*See* Gov't's Mot., ECF No. 81.) CIPA section 6 provides that "the United States may request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. app. 3 § 6(a). Any such hearing "shall be held in camera if the Attorney General certifies to the court in such petition that a public proceeding may result in the disclosure of classified information." *Id.* Pursuant to the Attorney General's certification that a public proceeding might result in the disclosure of classified information, the Court held a CIPA section 6 hearing *in camera*, with both the government and defense counsel in attendance, on September 13, 2021. For the foregoing reasons, the government's requested protective measures are granted in full.

I.  DISCUSSION

   A.  Factual Background

As charged in the Superseding Indictment, defendant Delowar Hossain attempted to travel outside the United States for the purpose of joining the Taliban, a terrorist group, and to kill

United States nationals located overseas. (Superseding Indictment ¶ 1, ECF No. 55.) The government avers that the bulk of the evidence it intends to introduce at trial consists of communications between the defendant and two confidential human sources—CHS-1 and CHS-2 (the "CHSs")—"during which the defendant described in detail his plan to travel to Afghanistan, join the Taliban, and fight against American soldiers as part of the defendant's self-professed plan of jihad." (Gov't's Opp'n to Def.'s Mot. to Compel at 3, 19, ECF No. 45; Compl ¶ 3, ECF No. 1.) At trial, the government intends to call the CHSs to testify in detail about their meetings and conversations with Hossain. (*See, e.g.,* Gov't's Mot. at 44, ECF No. 80.)

Because the government believes that certain security measures are necessary to protect the identities of the CHSs and the disclosure of classified information, the government has moved this Court for certain protective measures to be implemented at trial, including limited courtroom closures and limitations on cross-examination. The requested measures the government seeks are as follows:

1. During the testimony of the CHSs, only the Court, essential courtroom personnel, the defendant, the defendant's counsel, the defendant's close family, the Government's trial team, and one member of the district's press pool are permitted to be present in the courtroom;
2. This partial closure of the courtroom shall be tailored as follows: (a) a live audio broadcast of the CHSs' testimony shall be made available to the public at another location in the courthouse; (b) transcripts of the CHSs' testimony shall be made publicly available as soon as feasible after their testimony; and (c) the public docket shall be updated promptly to reflect the disposition of this motion seeking a partial courtroom closure, including the fact that, during the testimony of the CHSs, the measures set forth above will be implemented;
3. Public disclosure of the identities of the CHSs in connection with the trial of this matter is prohibited;
4. Public disclosure of the identity of an undercover officer of the New York City Police Department (the "UC") who participated in the investigation of the defendant is prohibited;[1]
5. The CHSs are permitted to testify using only the first names by which they were known to the defendant during the investigation of this case;
6. The CHSs are permitted to enter and exit the courthouse and courtroom through non-public entrances on the dates of their testimony, and the courthouse staff and U.S. Marshals Service shall assist the Government to make the necessary arrangements for the use of such non-public entrances by the CHSs;
7. Any videos, photographs, or other images of the CHSs that are shown in open court, or otherwise made available to the public, shall be altered to pixelate or otherwise obscure

---

[1] The government does not intend to call the UC as a witness at trial or introduce any evidence gathered through the defendant's interactions with the UC.

their faces (this measure shall not apply to materials viewed only by the Court, essential courtroom personnel, the jury, the defendant, his counsel and close family, and the Government's trial team);
8. The use of all non-official recording and photographic devices and methods, including sketching, is prohibited during the CHSs' testimony;
9. The defense shall not elicit at trial, during cross-examination of the CHSs, or otherwise, personal identifying information relating to the CHSs or the UC;
10. The defense shall not elicit at trial, during cross-examination of the CHSs, or otherwise, information about the CHSs' participation in other investigations or undercover activities unrelated to the defendant;
11. The defense shall not elicit at trial, during cross-examination of the CHSs, or otherwise, information relating to operational aspects of the means and methods used by law enforcement to record and capture the defendant's communications, such as the installation, placement, location, and concealment of recording devices, and the technology used to capture the defendant's electronic communications; and
12. The defense shall not elicit at trial, during cross-examination of the CHSs, or otherwise, information relating to any classified training received by the CHSs.

(*See* Gov't's Mot., ECF No. 81-1.)

Hossain does not oppose measure number 5 (CHSs can testify using only first names), 6 (CHSs can use non-public entrances and exits to the courthouse and courtroom), and 9 (the defense shall not elicit personal identifying information relating to the CHSs or the UC).[2] The Court therefore grants the government's request for those protective measures. Hossain opposes the remaining measures on the grounds that the proposed closure measures are unnecessary to protect the identities of the confidential sources and the integrity of any investigations.

The Court addresses the government's remaining requests for protective measures in two distinct categories: proposed courtroom closures—those designed to protect the identities of the CHSs—and proposed limits on cross-examination—those designed to prevent the unauthorized disclosure of classified information.

### A. The Government's Request for Courtroom Closures

The government seeks to partially close the courtroom during the testimony of the CHSs. Specifically, the government seeks to prohibit persons other than the Court, essential courtroom personnel, the defendant, the defendant's counsel, the defendant's close family, the Government's trial team, and one member of the district's press pool from being present in the courtroom while the CHSs are testifying. (Gov't's Mot. at 2-3, ECF No. 81-1.) The government

---

[2] Because the government does not intend to call the UC as a witness at trial or introduce any evidence gathered through the defendant's interactions with the UC, the same protective measures related to preventing public disclosure of the identity of the UC are moot.

suggests that the partial closure of the courtroom be tailored as follows: (a) a live audio broadcast of the CHSs' testimony shall be made available to the public at another location in the courthouse; (b) transcripts of the CHSs' testimony shall be made publicly available as soon as feasible after their testimony; and (c) the public docket shall be updated promptly to reflect that if this motion is granted, the measures set forth above will be implemented. (*Id.* at 3.)

The government also seeks to prevent public disclosure of the identities of the CHSs in connection with the trial, public disclosure of any videos, photographs, or other images of the CHSs unless those materials are altered to pixelate or otherwise obscure their faces,[3] and to prevent the use of all non-official recording and photographic devices and methods, including sketching, during the CHSs' testimony. (*Id.* at 4.)

Members of the public and the press "have a qualified First Amendment right to attend a criminal trial." *Waller v. Georgia*, 467 U.S. 39, 44 (1984). Ordinarily, there is a "presumption of openness." *Press-Enterprise Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984). "The Sixth Amendment, in turn, gives a defendant a right to a public trial." *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 485 (S.D.N.Y. 2018) (citation omitted). Therefore, "[t]he power to close a courtroom where proceedings are being conducted during the course of a criminal prosecution . . . is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons." *United States v. Cojab*, 996 F.2d 1404, 1405 (2d Cir. 1993).

However, "the right to an open trial may give way in certain cases to other rights or interests, such as . . . the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45. The standard is whether the presumption of openness has been overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 45 (quoting *Press-Enterprise Co.*, 464 U.S. at 510). "[T]he same test applies whether a closure motion is made . . . over a defendant's Sixth Amendment objection or . . . over the First Amendment objection of the government or press." *United States v. Smith*, 426 F.3d 567, 575 (2d Cir. 2005) (quoting *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995)).

Pursuant to *Waller*, the U.S. Court of Appeals for the Second Circuit has identified "four prerequisites" to excluding the public from a courtroom during certain criminal proceedings. *United States v. Abuhamra*, 389 F.3d 309, 329 (2d Cir. 2004). These are: "(1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings

---

[3] This measure shall not apply to materials viewed only by the Court, essential courtroom personnel, the jury, the defendant, his counsel and close family, and the Government's trial team. (Gov't's Mot. at 4, ECF No. 81-1.)

4

adequate to support the closure." *Abuhamra*, 389 F.3d at 329 (internal quotation marks omitted) (quoting *Waller*, 467 U.S. at 48).

Where only a partial closure of the courtroom is contemplated, however, "there must only be a 'substantial reason,' rather than an 'overriding interest' justifying the closure." *Smith*, 426 F.3d at 571 (quoting *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992)). In determining whether a closure is narrow enough to justify application of the "substantial reason" standard, courts consider the closure's "duration, whether the public can learn what transpired while the trial was closed (e.g. through transcripts), whether the evidence was essential, and whether selected members of the public were barred from the courtroom, or whether all spectators were excluded." *Carson v. Fischer*, 421 F.3d 83, 89-90 (2d Cir. 2005) (citing *Bowden v. Keane*, 237 F.3d 125, 129-30 (2d Cir. 2001)). Under the "substantial reason" standard, the government must demonstrate "that the interest that the closure would purportedly serve is especially grave, and that the risk that would be posed to that interest by not closing the courtroom is more than 'serious.'" *Bowden*, 237 F.3d at 129 (citing *Ayala v. Speckard*, 131 F.3d 62, 70 (2d Cir. 1997)).

This Court first finds that the requested courtroom closures constitute partial closures, such that the "substantial reason," rather than the "overriding interest," standard applies. The closure will be in effect only while the CHSs are testifying, and the proposed measures will allow the Court, essential courtroom personnel, the defendant, the defendant's counsel, the defendant's close family, the Government's trial team, and one member of the district's press pool to remain in the courtroom during their testimony. (Gov't's Mot. at 2-3, ECF No. 81-1.) Although the CHSs' testimony is likely to be critical to this case, the public may learn what transpired while the trial was closed via the live audio broadcast of the CHSs' testimony and the later-provided public transcripts of the CHSs' testimony. (*Id.*)

Second, the Court finds first that the government has advanced specific reasons that justify the protective measures requested even under the "overriding interest" standard. The government avers that "there is a substantial probability that requiring the CHSs to testify in a fully public proceeding would prejudice the following compelling interests: (a) protecting the true identity and safety of the CHSs and their families; (b) preserving the integrity of other national security investigations; and (c) maintaining law enforcement's ability to deploy the CHSs effectively in an undercover capacity." (Gov't's Mot. at 2, ECF No. 81-1.)

Courts have routinely held that the above interests are substantial and overriding under *Waller*. The Second Circuit has found that maintaining the "safety of a police officer working undercover surely constitutes an overriding interest." *Brown v. Artuz*, 283 F.3d 492, 501 (2d Cir. 2002); *see also Alimehmeti*, 284 F. Supp. 3d at 486 (citations omitted) ("The Second Circuit has repeatedly recognized the safety and effectiveness of an undercover law enforcement officer as an overriding interest that may justify a courtroom's partial closure."). The Second Circuit has also found that "[t]he state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest." *Ayala*, 131 F.3d at 72; *see also Nieblas v. Smith*, 204 F.3d 29, 33 (2d Cir. 1999) (finding closure warranted where testifying officer "could have been

5

assigned to further undercover work in the vicinity" where the defendant had trafficked in drugs).

Further, in its classified, ex parte submission, the government has advanced specific facts supporting its contentions that requiring the CHSs to testify in a fully public proceeding would harm the safety of the CHSs, future national security investigations, and the CHSs' ability to continue working as confidential informants. The Court will elucidate this point in a sealed, ex parte, and classified filing.

The Court finds that *Waller* factors two and three—that the court closure must be no broader than necessary to protect the government's interest, and that the court must consider reasonable alternatives to closing the proceeding—also weigh in favor of the limited closures proposed in this case. Courts in this district have authorized substantially similar courtroom closures under similar circumstances. In *United States v. Alimehmeti*, Judge Paul Engelmayer considered court closures in a case with a defendant charged with knowingly and intentionally providing and attempting to provide material support to ISIS. 284 F. Supp. 3d at 481. The government intended to rely heavily in its case-in-chief on testimony from certain undercover officers. *Id.* at 481-82, 487. The court there accepted substantially the same proposed protective measures requested by the government here, finding that the government's interest "in safeguarding the identity, and thereby protecting the safety, of working undercover officers," was an extremely substantial interest justifying the limited courtroom closure and that the partial court closures were "narrowly tailored to the needs at hand." *Id.* at 486-87; *see also United States v. Schulte*, 436 F. Supp. 3d 698, 704-05 (S.D.N.Y. 2020) (authorizing a partial closure of the courtroom during the testimony of CIA witnesses, even though the anticipated testimony was of great consequence to the case and was anticipated to last for approximately one-third of the trial). The Court similarly finds that the court closures the government proposes are no broader than necessary to protect the government's interest and are superior to alternative methods of closure.

Because the government has a substantial—indeed, overriding—interest in preventing the CHSs from testifying in open court that overrides the defendant's Sixth Amendment right, and the public and press's First Amendment right, to a public trial, because the scope of the court closures is limited, and because alternative closure methods, such as disguises or screens, are inferior to the ones the government proposes here, the Court grants the government's requests: 1) to prohibit persons other than the Court, essential courtroom personnel, the defendant, the defendant's counsel, the defendant's close family, the Government's trial team, and one member of the district's press pool from being present in the courtroom while the CHSs are testifying, as long as a live audio broadcast of the CHSs' testimony is made available to the public at another location in the courthouse and transcripts of the CHSs' testimony are made publicly available as soon as feasible after their testimony, 2) to prevent public disclosure of the identities of the CHSs in connection with the trial, 3) to prevent public disclosure of any videos, photographs, or other images of the CHSs unless those materials are altered to pixelate or otherwise obscure their faces, and 4) to prohibit the use of all non-official recording and

photographic devices and methods, including sketching, during the CHSs' testimony. (Gov't's Mot. at 2-4, ECF No. 81-1.)

### B. The Government's Request for Certain Limitations on Cross-Examination of CHS-1 and CHS-2

The government also seeks to preclude cross-examination of the CHSs on certain topics, which are: (1) information about the CHSs' participation in other investigations or undercover activities unrelated to the defendant; (2) information relating to operational aspects of the means and methods used by law enforcement to record and capture the defendant's communications, such as the installation, placement, location, and concealment of recording devices, and the technology used to capture the defendant's electronic communications; and (3) information relating to any classified training received by the CHSs. (Gov't's Mot. at 4-5, ECF No. 81-1.) The government provides two bases for these restrictions: the Federal Rules of Evidence and the law enforcement privilege. Hossain opposes these proposed restrictions on cross-examination.

A district court may prohibit the disclosure of classified information under the "generally applicable evidentiary rules of admissibility," *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984), since CIPA "does not alter the existing standards for determining relevance or admissibility." *United States v. Wilson*, 586 F. Supp. 1011, 1013 (S.D.N.Y. 1983) (citation omitted). The Federal Rules of Evidence relevant to the government's request to limit the scope of cross-examination are Rules 401, 402, and 403. Rule 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" provided "the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 402 provides that "[i]rrelevant evidence is not admissible," but that subject to certain exceptions, "relevant evidence is admissible." Fed. R. Evid. 402. However, under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

#### 1. *Cross-Examination on Participation by the CHSs in Other Investigations*

The Court finds that Federal Rule of Evidence 403 provides a sufficient basis for prohibiting cross-examination on information about the CHSs' participation in other investigations or undercover activities unrelated to the defendant. The defense contends that information about the CHSs' participation in other investigations or undercover activities unrelated to the defendant is relevant and probative to show bias and as evidence relevant to the defense's potential entrapment defense.

However, the Court finds under Federal Rule of Evidence 403 that any probative value this information might have is substantially outweighed by the danger of confusing the issues and

undue delay. *See Alimehmeti*, 284 F. Supp. 3d at 483, 494 (granting the government's request to preclude cross-examination related to "information pertaining to the UCs' participation in other investigations and undercover activities" under FRE 402 and 403); *see also United States v. Anderson*, 872 F.2d 1508, 1514, 1515 (11th Cir. 1989) (determining that a district judge did not abuse his discretion in excluding evidence related to a prior covert operation appellants had participated in as irrelevant and a risk of confusion to the jury). The Court thus grants the government's request to preclude cross-examination of the CHSs on information about the CHSs' participation in other investigations or undercover activities unrelated to the defendant.

As to the defense's potential entrapment defense, the Court finds that information about the CHSs' participation in other investigations or undercover activities unrelated to the defendant should be excluded under Rule 402. Inquiry into other investigations or undercover work the CHSs participated in has no probative value to the defense's entrapment defense and is thus irrelevant.

### 2. Cross-Examination on Law Enforcement Surveillance Techniques

The Court also finds that Federal Rules of Evidence 402 and 403 provide a sufficient basis for prohibiting cross-examination on information relating to operational aspects of the means and methods used by law enforcement to record and capture the defendant's communications, such as the installation, placement, location, and concealment of recording devices, and the technology used to capture the defendant's electronic communications. Information about the placement and concealment of recording devices, and various surveillance methods used by the CHSs, is irrelevant to the issues in this litigation pursuant to Federal Rule of Evidence 402.

The Court is also precluding cross-examination on information relating to operational aspects of the means and methods used by law enforcement to record and capture the defendant's communications under Federal Rule of Evidence 403 because courts in this district have found that the probative value of such lines of inquiry is substantially outweighed by the risk of prejudice to the government in compromising its operational methods as well as the danger of confusing the issues and misleading the jury. *See Alimehmeti*, 284 F. Supp. 3d at 491-92. Indeed, the *Wilson* court found that "the introduction of evidence detailing classified activities will have the tendency to focus attention on . . . the controversial character of foreign covert intelligence and counter-intelligence operations" and should be excluded under Rule 403. 586 F. Supp. at 1016. Because information relating to the installation, placement, location, and concealment of recording devices and the technology used to capture the defendant's electronic communications has no probative value to the defense's potential entrapment defense under Federal Rule of Evidence 402, and considering the risk of substantial prejudice to the government of allowing the defense to elicit detailed information about the surveillance means and methods used by the government, the Court precludes cross-examination on these topics pursuant to Federal Rules of Evidence 403 and 402.

### 3. Cross-Examination on the CHSs' Classified Training

Finally, the Court grants the government's motion to preclude cross-examination on any information relating to any classified training received by the CHSs based on the law enforcement privilege. The law enforcement privilege "allows the Government to withhold documents and empowers a court to prohibit cross-examination." *Alimehmeti*, 284 F. Supp. 3d at 492-93. A party asserting the law enforcement privilege must show that the evidence in question is the type "the law enforcement privilege is intended to protect," including "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise ... interfere with an investigation." *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (internal quotation marks omitted) (quoting *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988)). "Once the party asserting the privilege successfully shows that the privilege applies, the district court must balance the public interest in nondisclosure against 'the need of a particular litigant for access to the privileged information.'" *In re The City of New York*, 607 F.3d at 948 (quoting *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).

The Court finds that information related to the CHSs' classified training is covered by the law enforcement privilege because it is a classic example of information pertaining to law enforcement techniques and procedures. The Court holds that the law enforcement privilege applies to this information. *See Alimehmeti*, 284 F. Supp. 3d at 494-95 (precluding cross-examination into the investigative techniques used by the UCs and the UCs' training and work experience). To overcome the "strong presumption against lifting the privilege," the Second Circuit has determined that the party seeking disclosure must show "(1) that the suit is non-frivolous and brought in good faith, (2) that the information sought is [not] available through other discovery or from other sources, and (3) that the party has a compelling need for the privileged information." *In re the City of New York*, 607 F.3d at 945, 948 (internal quotation marks and quotations omitted). The Court in *Alimehmeti* tailored this test to criminal prosecution by articulating that a criminal defendant must show that the evidence covered by the law enforcement privilege "is necessary, or at least important, to his case; and (2) that there is not an alternative means to secure and present this evidence to the jury." *Alimehmeti*, 284 F. Supp. 3d at 494.

Applying this balancing test here, the Court finds that the information the defense seeks does not justify lifting the law enforcement privilege. The defense contends that it must cross-examine the CHSs on any classified training they have received because such cross-examination might reveal any law enforcement techniques commonly used to identify potential terrorism suspects and induce such persons to commit crimes, and therefore may support Hossain's entrapment defense. However, "the public interest in preserving the confidentiality of the sensitive means and methods used by law enforcement ... to investigate international terrorism

is uncommonly strong." *Alimehmeti*, 284 F. Supp. 3d 477, 494. The Court finds that the defense has not shown that inquiry into classified training techniques is necessary, important, or event relevant to Hossain's case. The Court thus finds that the law enforcement privilege has not been overcome and grants the government's motion to preclude cross examination on information related to the CHSs' classified training.

## II. CONCLUSION

For the reasons set forth above, the Court grants the government's motion for protective measures pursuant to CIPA section 6 in full.

Dated: New York, New York
September 21, 2021

SO ORDERED:

*Sidney H Stein*
Sidney H. Stein, U.S.D.J.