UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
UNITED STATES OF AMERICA,           :      19-CR-606 (SHS)
:
-v-                                 :
:
DELOWAR HOSSAIN,                    :
           Defendant.              :
:
------------------------------------------------------------X

### DELOWAR HOSSAIN'S POST-TRIAL MOTION TO SET ASIDE THE VERDICT OR FOR AN EVIDENTIARY HEARING

DAVID E. PATTON, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
    DELOWAR HOSSAIN
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700

Of Counsel:

Andrew J. Dalack, Esq.
Amy Gallicchio, Esq.
Assistant Federal Defenders

TO:   DAMIAN WILLIAMS, ESQ.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, NY 10007

      Attn:  Benjamin Woodside Schrier, Esq.
              Jessica K. Fender, Esq.
              Assistant United States Attorneys
              Southern District of New York

Table of Contents

I. Introduction ........................................................................................................... 1

II. Summary of Relevant Facts ................................................................................. 3

III. Standard of Review ............................................................................................... 4

IV. Argument .............................................................................................................. 6

   A.    No reasonable juror could have concluded beyond a reasonable doubt that Hossain took a substantial step towards providing material support to carry out the killing of U.S. nationals abroad or to the Taliban for the group's benefit. ......... 6

   B.    Because there was no proof that Hossain intended to give anything of value except himself to the Taliban, his convictions on both counts of the indictment punish him twice for essentially the same offense in violation of the rule against Double Jeopardy. ............................................................................................. 10

   C.    The Court should hold an evidentiary hearing to determine whether outside influences compelled the jury to consider and draw negative inferences from Hossain's decision not to testify. ............................................................................. 11

V. Conclusion .......................................................................................................... 13

I.   **Introduction**

The Court should set aside the jury's verdict convicting Delowar Hossain of attempting to provide material support for terrorism and of attempting to contribute funds, goods, and services to the Taliban. Fed. R. Crim. P. 29(c). To meet its burden, the Government was required to prove beyond a reasonable doubt that Hossain's conscious objective was to offer himself and other resources to prepare for or carry out a violation of 18 U.S.C. § 2332 (the killing of U.S. nationals abroad), and that Hossain took a substantial step towards completing the offense. The Government was also required to establish beyond a reasonable doubt that Hossain specifically intended to provide himself or other real property to the Taliban for the group's benefit, and that he did more than just prepare to commit the offense.

However, there was no evidence presented at trial that Hossain had any contact with the Taliban; no evidence that Hossain took any steps to prepare for or carry out the killing of anyone, including U.S. persons located abroad; and insufficient evidence that Hossain did anything more than merely prepare to travel to Afghanistan to possibly meet with the Taliban and provide them with something of value. Neither the fact that Hossain talked a lot about joining the Taliban nor that he almost boarded a plan to Thailand constitutes a substantial step towards traveling to Afghanistan to join the Taliban and kill Americans.

To get around the fact that Hossain never had any contact with the Taliban, the Government heavily relies on Hossain's recorded communications with two confidential human sources, in which he repeatedly discussed his enthusiasm for the Taliban and for leaving the United States. But Hossain's talk is not enough, nor does

1

it transform his otherwise-lawful purchases of camping equipment and of a flight to Thailand into substantial steps towards the commission of a crime. Rather, as he boarded a flight to Thailand alongside the Government's confidential sources, Hossain had no concrete plans to travel to Afghanistan and no contacts in the Taliban to facilitate his entry into the group. Against this backdrop, no reasonable juror could have been persuaded beyond a reasonable doubt that Hossain's conduct constituted anything more than a thought crime, and the Court should set aside the jury's verdict.

Separately, the Court should hold a hearing to determine whether Hossain's right to a fair trial was violated because jurors considered and held against Hossain his decision to remain silent and not testify. Both the Fifth Amendment right to due process and the Sixth Amendment right to an impartial jury protect against juror bias and guarantee a jury "capable and willing to decide the case solely on the evidence before it," Smith v. Phillips, 455 U.S. 209, 217 (1982), and consistent with the trial court's instructions, Morgan v. Illinois, 504 U.S. 719, 728 (1992). But in this case, Hossain's jurors considered his failure to testify and drew an adverse inference against him. As set forth in the attached Declaration from Andrew J. Dalack, Esq., and following Hossain's conviction, one of the jurors contacted undersigned counsel to discuss his concerns about the Government's use of confidential human sources in this case, and how often the Government employs confidential human sources in non-terrorism-related criminal investigations. See Exhibit A to Dalack Declaration. During a telephone conversation with the juror, undersigned counsel learned that the jury disregarded the Court's instruction to avoid any discussion of Hossain's decision to remain silent and held it against him that he did not call any witnesses. Although

2

jurors are generally prohibited from testifying about "any statement made or incident that occurred during the jury's deliberations," Fed. R. Evid. 606(b), there are exceptions (Fed. R. Evid. 606(b)(2)), and an evidentiary hearing is necessary to determine whether jurors' scrutiny and consideration of Hossain's silence was encouraged by outside influences. Fed. R. Evid. 606(b)(2)(B).

## II.  Summary of Relevant Facts

The Government's evidence at trial consisted primarily of Hossain's surreptitiously recorded conversations with two FBI confidential human sources. These recordings, which spanned nearly a year's worth of regular in-person and WhatsApp communications between Hossain and the confidential sources, reflected Hossain's interest in many topics, including various interpretations of Islam and the Taliban. At various points, Hossain expressed a strong desire to leave the United States and to live abroad, including in Afghanistan, and to join the Taliban. Hossain saved money, bought a ticket to Thailand, and purchased various camping and outdoors equipment. He also talked often about "dirtying" himself to avoid suspicion by spending money on alcohol and strippers and by making plans to rendezvous with women in Thailand. On July 26, 2019, Hossain was arrested at the airport trying to board a flight to Bangkok.

There was no evidence that Hossain had contact with anyone in the Taliban, or with anyone who could facilitate his entry into the group. There was also no proof that Hossain had any experience with firearms or other weapons, and no evidence that he had any clue how he would travel from Thailand to Afghanistan. When he was arrested, Hossain did not possess any maps, flight tickets, or land routes from

3

Thailand to Afghanistan, and there was no evidence that Hossain made arrangements with anyone to give any group, including the Taliban, any camping equipment, money, or himself as personnel. Indeed, with respect to the equipment, there was only proof that it was intended for Hossain and the sources' personal use.

### III. Standard of Review

The Constitution prohibits a jury from convicting a defendant if no reasonable jury could have found each element proven beyond a reasonable doubt. "[I]n our system … the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion." Jackson v. Virginia, 443 U.S. 307, 318 n.10 (1979). Id. at 319. "To be sure, the factfinder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of 'not guilty'… [but] [t]he power of the factfinder to err upon the side of mercy, however, has never been thought to include a power to enter an unreasonable verdict of guilty." Id. (citing Carpenters & Joiners v. United States, 330 U.S. 395, 408 (1899)).

In this case, Hossain's conviction cannot stand because the Government's evidence did not allow the jury to conclude beyond a reasonable doubt (without speculating) that Hossain took a substantial step towards providing the Taliban with material support for the group's benefit, or with knowledge that such support would be used to kill U.S. nationals abroad.

In reviewing a sufficiency challenge, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty." United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008) (emphasis in original) (cleaned up). "The jury may not be permitted to

4

conjecture merely, or to conclude upon pure speculation or from passion, prejudice or sympathy." United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972).

Because the jury may only make reasonable inferences grounded in evidence, the Court is obligated to "take a hard look at the record and to reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." Blasini-Lluberas, 169 F.3d at 62 (cleaned up) (quoting United States v. Woodward, 149 F.3d 46, 56 (1st Cir. 1998)). "[C]ourts may not credit inferences within the realm of possibility when those inferences are unreasonable." United States v. Quattrone, 441 F.3d 153, 169 (2d Cir. 2006). Acquittal is required if, in order to find an element of an offense beyond a reasonable doubt, a rational juror would have to speculate. United States v. Stewart, 305 F. Supp. 2d 368, 370 (S.D.N.Y. 2004).

The jury also does not receive any greater deference when interpreting statements made by the defendants or by others—not even if the disputed issue is one of criminal intent. While the Court defers to the jury's determinations of witness credibility, it must review each inference from the witness testimony for reasonableness. See Stewart, 305 F. Supp. 2d at 378 (defendant's statements insufficient to show criminal intent). See also, e.g., United States v. Cianchetti, 315 F.2d 584, 588 (2d Cir. 1963) (defendant's statements insufficient to show membership in conspiracy); United States v. Torres, 604 F.3d 58, 69 (2d Cir. 2010) (defendant's statement and other evidence insufficient to show knowledge of purposes of conspiracy).

In making the overall sufficiency determination, the Court is "obligated to 'consider the evidence presented at trial in its totality, not in isolation.'" United States

5

v. Kapelioujnyj, 547 F.3d 149, 154 (2d Cir. 2008) (quoting United States v. Zhou, 428 F.3d 361, 369-70 (2d Cir. 2005)). "If the evidence is such that reasonable jur[ors] must necessarily have … a [reasonable] doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration." Taylor, 464 F.2d at 243. If the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." United States v. Coplan, 703 F.3d 46, 69 (2d Cir. 2012). Accordingly, where the evidence is "in equipoise," acquittal is required. Id.

As set forth below, there is just as much evidence supporting "a theory of innocence" as there is for any "theory of guilt." Coplan, 703 F.3d at 69. The Constitution requires acquittal.

## IV. Argument

### A. No reasonable juror could have concluded beyond a reasonable doubt that Hossain took a substantial step towards providing material support to carry out the killing of U.S. nationals abroad or to the Taliban for the group's benefit.

"A conviction for attempt requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." United States v. Farhane, 634 F.3d 127, 145 (2d Cir. 2011). Taken in a light most favorable to the Government, its evidence primarily went to one half of that equation: Hossain's intent. Because Hossain had no contacts whatsoever with the Taliban and no real plans for how to travel from Thailand to Afghanistan, Hossain's near flight to Thailand is not, as a matter of law, a substantial step towards

6

providing personnel or any goods to the Taliban to accomplish any of its goals, including the killing of U.S. nationals abroad.

At common law, attempt had been limited to conduct close to the completion of the intended crime. Farhane, 634 F.3d at 146 (citing People v. Werblow, 241 N.Y. 55, 69 (1925) (Cardozo, J.) (holding that to constitute attempt, suspect's conduct must "carry the project forward within dangerous proximity to the criminal end to be attained"); Commonwealth v. Paslee, 177 Mass. 267, 272 (1901) (Holmes, J.) (recognizing that "some preparations may amount to an attempt" when they come "very near to the accomplishment of the act"). The "substantial step" requirement for attempt derives from the Model Penal Code, which expressly sought to "widen the ambit of attempt liability." Farhane, 634 F.3d at 146 (citing Model Penal Code § 5.01(1)(c)). In plain terms, a "'substantial step' must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." Id. (cleaned up). "It is conduct 'planned to culminate' in the commission of the substantive crime being attempted" and that which reveals a defendant's "firm disposition" to commit the charged crime. Id. (cleaned up).

The paucity of the government's evidence on this score is illustrated by comparison to cases in which there was both sufficient and insufficient proof of a defendant's substantial step.

For example, in United States v. Delvecchio, 816 F.2d 859 (2d Cir. 1987), the substantive crime at issue was possession of a large quantity of heroin. The Second Circuit held that a substantial step to commit that crime was not established by proof that defendants had met with suppliers, agreed on terms, provided their beeper

7

numbers and selected a location to consummate the sale the following evening. But because the defendants failed to appear at the agreed meeting place, such evidence, at most, established a "verbal agreement," which, "without more, is insufficient as a matter of law to support an attempt[ed possession] conviction." Id. at 862. In so concluding, the Second Circuit noted that what was missing was any act to effect possession, such as acquisition, or attempted acquisition, of the purchase money or travel to the agreed-on purchase site. See id.

Similarly, in United States v. Rosa, 11 F.3d 315 (2d Cir. 1993), the substantive crime at issue was heroin distribution. But there was no evidence that the defendant had produced any heroin for a proposed sale, and there was no evidence that the defendant had even entered into an agreement with a supplier or even made an inquiry of a supplier to obtain heroin for the proposed sale. This evidence "provided no basis on which a rational juror could have found beyond a reasonable doubt that [the defendant] had taken a substantial step toward possessing heroin for resale … and it was therefore insufficient to support [his] conviction for attempt." Id. at 340-41.

In contrast to Rosa and Delvecchio is Farhane. There, the Second Circuit determined that there was sufficient evidence establishing the defendant's substantial step towards providing material support to al Qaeda, a designated foreign terrorist organization. Specifically, the defendant, a medical doctor, had traveled to meet with a purported al Qaeda member; swore an oath of allegiance to al Qaeda; promised to be on call in Saudi Arabia to treat wounded al Qaeda fighters; and provided private and work contact numbers for al Qaeda members to reach him in Saudi Arabia whenever they needed treatment. 634 F.3d at 148-49. Against this

8

backdrop, the defendant clearly "engaged in conduct planned to culminate in supplying al Qaeda with personnel, thereby satisfying the substantial step requirement." Id. at 149.

In this case, however, the jury punished Hossain for radical and criminal thoughts rather than criminal deeds. Unlike the defendant's conduct in Farhane, whose words and actions in traveling to meet with a purported al Qaeda member manifested more than just radical sympathies, Hossain's conduct in attempting to board a plan to Thailand did not cross the line from mere preparation to a substantial step. Put differently, Hossain's anticipated travel to Thailand did not make him substantially closer to providing the proscribed objects—himself and the outdoor equipment—to the Taliban because he had no Taliban contacts, had made no effort to contact the Taliban, and had no plans whatsoever to travel to Afghanistan. See, e.g., Rosa, 11 F.3d at 340 (holding evidence insufficient to support conviction for attempt to distribute heroin in absence of proof that defendant ever "produce[d] any heroin" or reached agreement with a heroin supplier to acquire heroin for planned distribution).

Hossain's near boarding of the plan was certainly another step in his plan. But without any (real or attempted) connection to the Taliban, boarding a plan to Thailand was still mere preparation. It was no different than Hossain's purchasing of the outdoors equipment or the plane ticket itself because it only marginally advanced Hossain's fantastic scheme. Because Hossain had no contacts with the Taliban and no plans to get to Afghanistan, the jury necessarily assumed that he would have had to take additional steps towards effectuating his travel to Afghanistan after arriving in Thailand—i.e., the real substantial step towards completion of the offense. Because

9

the jury essentially convicted Hossain for trying to fly to Thailand with a head full of extremist, Taliban-sympathizing thoughts, the Court should set aside its verdict.

> **B. Because there was no proof that Hossain intended to give anything of value except himself to the Taliban, his convictions on both counts of the indictment punish him twice for essentially the same offense in violation of the rule against Double Jeopardy.**

Count 1 of the indictment charged Hossain with attempting to provide himself as personnel to the Taliban to carry out or prepare for the killing of U.S. nationals abroad. Count 2 of the indictment charged Hossain with attempting to provide himself and other goods to the Taliban for the group's benefit. On its face, counts 1 and 2 charge different crimes. However, at trial, there was no testimony or evidence whatsoever that Hossain or the confidential sources intended to provide the Taliban with any tangible items besides themselves, including the camping equipment. Indeed, the second confidential source clarified that Hossain's intent was for him and the two confidential sources to use the camping equipment personally. There was no proof that the goods were to be transferred to anyone, let alone the Taliban. As a result, Hossain was essentially convicted of attempting to provide himself to the Taliban for the group's benefit twice, which is a violation of his Double Jeopardy rights.

The Double Jeopardy Clause of the Fifth Amendment encompasses three distinct guarantees: (1) It protects against a second prosecution for the same offense after acquittal; (2) It protects against a second prosecution for the same offense after conviction; and (3) It protects against multiple punishments for the same offense. United States v. Josephberg, 459 F.3d 350, 354-55 (2d Cir. 2006). But where there has

10

been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed. Id. at 355. Thus, where a defendant is prosecuted and convicted on multiplicitous counts, the appropriate remedy is to vacate the conviction on all but one. Id.

In this case, count 1 required proof that Hossain attempted to provide himself to the Taliban with knowledge or intent that his assistance be used to prepare for or carry out the killing of U.S. nationals. Count 2, however, charged an offense with a broader scope, and required proof only that Hossain sought to provide himself to the Taliban for the group's benefit. Against this backdrop, and because there was no proof at trial that Hossain intended to give the Taliban anything of value except himself, Hossain's conviction on count 1 was essentially for the same offense as count 2, such that count 1 should merge with count 2 for the purposes of sentencing. United States v. Mostafa, 965 F. Supp. 2d 451, 464 (S.D.N.Y. 2013) ("[M]ultiplicity is properly addressed by the trial court at the sentencing stage. At that time, the district court would be required to vacate one of the two convictions.").

### C. The Court should hold an evidentiary hearing to determine whether outside influences compelled the jury to consider and draw negative inferences from Hossain's decision not to testify.

Attached to this motion is a declaration from undersigned counsel regarding a telephone call with one of the jurors who decided Hossain's trial. Specifically, after Hossain was convicted, one of the jurors e-mailed undersigned counsel to solicit a conversation about our familiarity with the Government's use of confidential human sources in other non-terrorism-related criminal investigations. A few days after

11

receiving the email, undersigned counsel spoke with the juror and learned that, during the jury's deliberations, Hossain's failure to testify or present any defense witnesses was discussed and held against Hossain.

Of course, the Court cannot receive testimony from a juror about a jury's deliberations subject to three exceptions. Fed. R. Evid. 606(b). One of those exceptions allows a juror to testify about whether "an outside influence was improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2)(B). Here, Hossain's jury actively discussed his failure to present a defense, including through his own testimony, and drew adverse inferences against him as a result. What is not clear, however, is whether the jury's discussion about Hossain's decision not to testify was motivated by outside influences, including jurors' preconceived notions or perceptions about what Hossain could or should have done based on conversations with loved ones or friends, or through mass medial portrayals of courtroom drama. Probing the presence of any such outside influences on the jury's deliberations would be an appropriate exercise of the Court's discretion, particularly since the jury plainly disregarded the Court's admonishment not to consider Hossain's silence against him. The Court should hold an evidentiary hearing.

## V. Conclusion

For the reasons set forth above, the Court should set aside Delowar Hossain's guilty verdict or hold an evidentiary hearing.

Dated: New York, New York
 November 24, 2021

 Respectfully Submitted,

 /s/ Andrew J. Dalack
 Andrew J. Dalack, Esq.
 Amy Gallicchio, Esq.
 Federal Defenders of New York, Inc.
 (212) 417-8768

 Counsel for Delowar Hossain